Randy BONNETT, Claimant
and Appellant,

v.

CUSTER LUMBER CORPORATION,
Employer and Appellee,

v.

CIGNA PROPERTY AND CASUALTY
COMPANIES, Insurer and
Appellee.

No. 18760.

Supreme Court of South Dakota.

Considered on briefs Nov. 29, 1994.

Decided March 1, 1995.

Lawrence R. Bihlmeyer, Rapid City, for claimant and appellant.

Mary A. Gubbrud and Craig A. Pfeifle of Lynn, Jackson, Shultz & Lebrun, Rapid City, for appellees.

MILLER, Chief Justice.

In this appeal it is asserted that the South Dakota Department of Labor (Department) and the trial court erred in denying a claimant permanent total disability benefits under the odd-lot doctrine. We affirm.

### FACTS

On June 25, 1987, Randy Bonnett (Bonnett) injured his left leg while working for Custer Lumber Corporation (Custer Lumber). Ultimately, his treating physician restricted his work activities to "no standing or walking more than three hours in an eight hour shift and no lifting greater than 50 pounds." Custer Lumber's worker's compensation carrier, Cigna Property and Casualty Companies, paid benefits for a fifty percent permanent, partial disability.

Bonnett now appeals Department's decision denying his permanent, total disability claim and the circuit court's affirmance thereof. He contends he is not competitively employable and therefore is totally disabled under the odd-lot doctrine. Bonnett alleges Department was clearly erroneous in finding that (1) an employer, Dakota Cinch, offered suitable employment to him, which he did not accept for reasons unrelated to his injury; (2) he lacked motivation to find work and did not make a reasonable job search; (3) vocational rehabilitation in the form of on-the-job training was available to him; (4) his pain,

though moderate in degree, was not continuous, severe or debilitating; (5) he quit employment as a dispatcher for reasons unrelated to his injury, namely nervousness and dislike for the job; and (6) he was deemed ineligible for state rehabilitation services because he misled the rehabilitation counselor about restrictions on the use of his hands and wrists.

## DECISION

### WHETHER THE DECISION OF DEPARTMENT TO DENY BONNETT PERMANENT, TOTAL DISABILITY BENEFITS UNDER THE ODD–LOT DOCTRINE WAS CLEARLY ERRONEOUS IN LIGHT OF THE EVIDENCE PRESENTED.

■ Bonnett petitioned Department for an award of permanent total disability benefits, *i.e.*, "odd-lot" benefits. To receive "odd-lot" worker's compensation benefits, the claimant must show that he has a temporary or permanent "total disability." *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 231 (S.D. 1994). An individual is totally disabled "if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in insubstantial income." *Id.* (citations omitted). In *Petersen*, we explained the burdens of production and persuasion associated with this "odd-lot" test:

[T]he ultimate burden of persuasion remains with the claimant to make a prima facie showing that his physical impairment, mental capacity, education, training and age place him in the odd-lot category. The burden then shifts to the employer to show that some form of suitable work is regularly and continuously available to claimant.

We have recognized two avenues by which a claimant may make the required prima facie showing for inclusion in the odd-lot category. First, if the claimant is "obviously unemployable," then the burden of production shifts to the employer to show that some suitable employment is actually available in claimant's community for persons with claimant's limitations. A

claimant may show "obvious unemployability" by: (1) showing that his "physical condition, coupled with his education, training and age **make it obvious** that he is in the odd-lot total disability category," or (2) persuading the trier of fact that he is in fact in the kind of continuous, severe and debilitating pain which he claims. Second, if " 'the claimant's medical impairment is so limited or specialized in nature **that he is not obviously unemployable** or relegated to the odd-lot category,' then the burden remains with the claimant to demonstrate the unavailability of suitable employment by showing that he has unsuccessfully made 'reasonable efforts' to find work." The burden will only shift to the employer in this second situation when the claimant produces substantial evidence that he is not employable in the competitive market.

*Id.* at 231–32 (citations omitted) (emphasis in original).

■ Bonnett points to evidence in the record which either directly or indirectly contradicts Department's factual findings, most notably the testimony of two experts who opined that he was not competitively employable in his community. However, the trier of fact is free to accept all, part, or none of an expert's opinion. *Hanson v. Penrod Constr. Co.*, 425 N.W.2d 396, 398 (S.D.1988). Furthermore, " 'the question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding.' " *Kennedy v. Hubbard Milling Co.*, 465 N.W.2d 792, 794 (S.D.1991) (quoting *Lawler v. Windmill Restaurant*, 435 N.W.2d 708, 711 (S.D.1989) (Morgan, J., concurring specially)). On our review of the record, we find there is substantial evidence to support Department's findings and its ultimate conclusion that Bonnett was not permanently and totally disabled. We will consider each of the disputed findings in turn.

■ First, Department's finding that Bonnett refused an offer of suitable employment is not clearly erroneous. The testimony of Bill Tysdal (Tysdal), a vocational rehabilitation counselor, indicated that Dakota Cinch, a

leather works factory, was willing to hire Bonnett in an on-the-job training position beginning April 27, 1992. Although Bonnett testified that he never received notification of the offer, there is evidence in the record to refute this claim. A letter dated April 16, 1992, indicated that Custer Lumber's attorney reported the job offer to Bonnett's attorney. The office records of James Wilson (Wilson), a vocational rehabilitation counselor for the state of South Dakota, show that Bonnett was aware he was under consideration for a position, but that Bonnett claimed it was a "standing job" outside of his physical restrictions. Similarly, these office records reflect that on April 30, 1992, Bonnett's attorney informed Wilson that Bonnett "was not able" to work at Dakota Cinch, "primarily because of his finger and manual dexterity." These conversations do not suggest that Bonnett and his attorney were unaware of available employment opportunities at Dakota Cinch. Rather, they indicate that Bonnett rejected the position on the basis of various purported physical problems. Likewise, in deposition testimony, the owner of Dakota Cinch indicated he had arranged for Bonnett to perform sedentary work, but implied that Bonnett simply did not "want to work." Finally, we note that Bonnett's testimony regarding ignorance of the job offer was subject to Department's in-person assessment of his credibility. In accordance with our settled law, we give weight to Department's judgment that his testimony was not believable. *See Lien v. Miracle Span Corp.*, 456 N.W.2d 563, 565 (S.D.1990) (citing *Application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413 (S.D.1986)) ("Due regard shall be given to the opportunity of the agency to judge the credibility of the witness.").

■ We also affirm Department's findings that vocational rehabilitation, in the form of the on-the-job training position at Dakota Cinch, was available to Bonnett and that he did not make a reasonable job search. Tysdal reported that Dakota Cinch was receptive to accommodating employees with disabilities, was willing to engage in an on-the-job training program with Bonnett, and had successfully employed another individual with similar physical limitations in the same job contemplated for Bonnett. Further, as not-

ed above, there was evidence indicating that Dakota Cinch had made a position available to Bonnett and that he was aware of this employment opportunity. Bonnett's representations that the job involved too much standing did not coincide with the owner's claim that Bonnett could perform the work while sitting on a stool, Tysdal's report that the owner was willing to provide employment which met Bonnett's restrictions, or Wilson's understanding that sedentary positions were available at Dakota Cinch.

■ Department's finding that Bonnett's pain, though moderate in degree, was not continuous, severe or debilitating, is also supported by the record. Bonnett's physician, while noting that Bonnett experiences "moderate" pain, did not indicate that this pain prevented Bonnett from obtaining employment. On November 1, 1989, Bonnett's doctor noted in his medical record: "I believe that this patient needs some type of sit-down job that does not require standing on his feet for more than 3 hours each day. If he could find a job that is primarily sit-down for more than half the time, I believe he could be employed." On December 1, 1989, the doctor's narrative records indicated that "some type of work such as mail carrier, truck driver or employment in gold jewelry manufacturing probably would be appropriate" and "[i]t is also possible he may be retrained in areas such as small appliance repair." On January 18, 1990, the doctor's narrative simply emphasizes Bonnett's need for sedentary employment. On March 19, 1990, the doctor wrote: "He has still been unable to obtain satisfactory work as I believe he needs to be sitting at least 3–4 hours each day." None of these entries, by Bonnett's own physician, suggest that he is unable to work due to debilitating, severe or continuous pain.

■ We also cannot conclude Department clearly erred in finding that Bonnett quit a dispatcher position for reasons unrelated to his injury, namely nervousness and dislike for the position. As to his reasons for no longer working there, Bonnett testified:

It become quite a difficult situation for me to try to sit and listen to all of the radios that were going on at the same time, plus

take care of a phone and the people that walked in, too, at the same time. Too much was going on at once for me to try to comprehend everything that was going on and being able to hear the radios.... [W]e determined that I wasn't really suited for that type of work because of my being able to hear what was going on and me being nervous about being in that type of position and being able to comprehend everything that was going on at the same time.

Although Bonnett suggested that a diagnosed hearing problem contributed to his problems on the job, he also testified that he never obtained the hearing aid prescribed for his condition and never inquired whether a hearing aid would be covered by his Medicaid benefits. Further, Bonnett's medical records indicate he "does not like that type of work and cannot continue being a dispatcher." In addition, we defer to Department's ability to gauge Bonnett's credibility during direct and cross-examination regarding his reasons for leaving this position.

 Finally, Department did not clearly err when it found that Bonnett's certification of ineligibility for state rehabilitation services arose out of misleading statements to Wilson. As noted above, Bonnett represented to Wilson that the on-the-job training position at Dakota Cinch was "a standing job," when there was other evidence in the record which conflicted with that claim. Subsequently, Bonnett and his attorney notified this counselor that Bonnett was not able to work at Dakota Cinch due to below average finger and manual dexterity, possibly arising out of a hand/wrist injury received in 1985. Yet, Bonnett's medical records revealed no such current restrictions on the use of his hands or wrists and, while some measures of his manual dexterity were low, other diagnostic evidence suggested that Bonnett would be well suited for the leather working position. Further, evidence that Bonnett was later offered employment with Dakota Cinch failed to suggest that he was "unable" to perform the work. According to Wilson's testimony, Bonnett's subsequent ineligibility for rehabilitation services was triggered by his new, unsubstantiated claims of problems working with his hands and the unproductiveness of his past and continuing job search.

Department's factual findings, reinforced as they are by evidence in the record, support the conclusion that Bonnett is not permanently and totally disabled as defined by South Dakota law. First, Bonnett's medical restrictions of no standing or walking for more than three hours and no lifting more than fifty pounds do not render him "obviously unemployable," particularly in light of his own doctor's suggestions as to appropriate positions which fall within these physical restrictions. Second, Bonnett's own medical records do not support the conclusion that his pain was so severe, debilitating or continuous as to render him unable to engage in substantial employment. Third, evidence of appropriate on-the-job training opportunities which have not been adequately pursued by Bonnett suggests that he did not make a reasonable job search and that he is, in fact, capable of obtaining suitable employment.

Affirmed.

SABERS, AMUNDSON, and KONENKAMP, JJ., and WUEST, Retired Justice, concur.