Gerald SPITZACK, Claimant
and Appellee,

v.

The BERG CORPORATION,
Employer and Appellant,

and

Wausau Insurance Companies,
Insurer and Appellant.

No. 18542.

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1994.

Decided May 24, 1995.

---

Wynn A. Gunderson, Paul S. Swedlund of Gunderson, Palmer, Goodsell and Nelson, Rapid City, for claimant and appellee.

Craig A. Pfeifle of Lynn, Jackson, Shultz & Lebrun, Rapid City, for appellants.

KONENKAMP, Justice.

Gerald Spitzack sought odd-lot category permanent total disability benefits. The Department of Labor, Division of Labor and Management (Department) denied his request. On appeal, the circuit court reversed the Department. Employer and its worker's compensation insurer, Wausau Insurance, appeal the following issues:

I. Did the circuit court err in concluding that the Department's denial of permanent total disability benefits was clearly erroneous?

II. Did the circuit court err by requiring Employer to carry the burden of proof

that retraining or rehabilitation was feasible?

We affirm in part, reverse in part, and remand.

### FACTS

On January 12, 1990, while working for his employer of seventeen years, The Berg Corporation (Employer), forty-five year old Gerald Spitzack was throwing a hook into a flatbed trailer, when he slipped on ice and fell, injuring his back. Two weeks later, pain radiating from his lower back to his legs prompted him to visit Dr. Gregory Scherr, a chiropractor, who placed him on a conservative treatment regime of spinal manipulation, electromuscular stimulation, hot-cold moist pack applications, massage therapy, and exercise. Dr. Scherr also referred him to Dr. Dale Berkebile, an orthopedic surgeon, to see if surgery was warranted. A CT scan revealed herniation in the lumbar spine. In the meantime, Dr. Scherr released Spitzack to perform light duty work.

Spitzack was also referred to Dr. Steven Goff, a physiatrist. Dr. Goff agreed with Dr. Scherr's method of treatment, but additionally prescribed a TENS unit, a device which delivers low voltage Transcutaneous Electrical Nerve Stimulation to reduce or block pain. (After one month, Spitzack stopped using the TENS unit because it did not reduce the pain.) Although Dr. Goff returned Spitzack to light duty work, he recommended a sedentary-type job. Thereafter, Dr. Scherr instructed Spitzack not to perform his previous work. From May 5, 1990 until Employer went out of business on July 31, 1990, Spitzack worked at home making occasional phone calls for Employer. This non-physical labor, for which he received $100 per week, fit within his work restrictions.

During June and July of 1990, Spitzack underwent six weeks of physical therapy and a four-week work hardening program, but his condition persisted. On July 30, Dr. Goff felt Spitzack's condition was plateauing and projected he would reach maximum medical improvement in two to three months. Dr. Goff also expressed doubt about Spitzack's ability to ever resume a full-time job.

Wausau Insurance retained the services of Jeff Bailie, a certified rehabilitation consultant with Karr Rehabilitation Services. Bailie conducted a vocational assessment and a computer-assisted labor market survey to find work for someone with Spitzack's physical limitations. Although Bailie found three possible occupation areas—microfilm document preparation, hardware and home improvement, and taxi cab coordinating or dispatching—there were no openings in these fields which would accept someone with Spitzack's physical condition. Shari McDonald, also of Karr, then took over from Bailie and furnished several leads to Spitzack, some of which were merely newspaper clippings or job listings. She admittedly failed to consider Spitzack's physical restrictions, and in many cases, she did not know if the "leads" were actual job openings. Months later, William Peniston, a rehabilitation specialist Spitzack hired, concluded that Spitzack was not a good candidate for retraining.

On November 19, 1990, as Spitzack's pain persisted, Dr. Lee Ahrlin, an orthopedic surgeon, performed an independent examination. Unable to determine the source of the pain, Dr. Ahrlin concluded Spitzack could handle light duty activities. Three months later, Dr. Goff examined Spitzack again and noted that he was taking twenty Bufferin tablets per day for pain. Dr. Goff gave Spitzack an 11% whole person impairment rating and ordered a functional capacities assessment (FCA). Dr. Scherr's April 10, 1991 FCA concluded that Spitzack could work a six-hour day with varied standing, sitting, and walking. Lifting was essentially restricted to under twenty pounds. Bending, use of his arms, hands, feet, and other physical activities were limited. A Key Functional Assessment was also conducted, with similar results. An MRI on February 4, 1992 reconfirmed herniation in the lumbar spine, a condition that had not significantly changed since the December 1990 CT scan. A neurologist in Sioux City opined that Spitzack might have a ruptured disc requiring surgery.

Unable to find work due to his pain and physical restrictions, Spitzack petitioned for permanent total disability benefits. At the

time of the administrative hearing, Spitzack was forty-eight years old, had an eleventh grade education, with no GED or additional schooling. As the operating foreman handling train derailments, his duties with Employer had included planning jobs, obtaining the necessary permits, and supervising the derailment crew. His previous jobs included working as a cement tile company laborer, a creamery employee, and a bartender.

## ANALYSIS

■■■ Our standard of review for administrative decisions is well established. We will overrule an agency's factual determinations only if they are "clearly erroneous." Conclusions of law, however, obtain no deference and are fully reviewable. *Permann v. Department of Labor, Unemployment Ins. Div.,* 411 N.W.2d 113 (S.D.1987). Whether a claimant makes a prima facie case to establish odd-lot total disability inclusion is a question of fact. *Petersen v. Hinky Dinky,* 515 N.W.2d 226, 231 (S.D.1994); *Shepherd v. Moorman Mfg.,* 467 N.W.2d 916, 919 (S.D. 1991). This Court will give great weight to findings made and inferences drawn by an agency on questions of fact. *Matter of SDDS, Inc.,* 472 N.W.2d 502, 507 (S.D.1991); *Kennedy v. Hubbard Milling Co.,* 465 N.W.2d 792, 794 (S.D.1991).

> We do not substitute our judgment for that of [Department] on the weight of the evidence[.] In other words, even if there is evidence in the record which tends to contradict the Department's factual determination, so long as there is some "substantial evidence" in the record which supports the Department's determination, this court will affirm it. (Citations omitted.)

*Shepherd,* 467 N.W.2d at 919. We will reverse only if we are definitely and firmly convinced that a mistake has been made. *Day v. John Morrell & Co.,* 490 N.W.2d 720, 723 (S.D.1992).

### I. Department erred in finding Claimant had not established odd-lot disability status.

■■■ We define odd-lot total disability as follows:

> [A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in insubstantial income.

*Shepherd,* 467 N.W.2d at 918; *Rank v. Lindblom,* 459 N.W.2d 247, 249 (S.D.1990); *Wendel v. Domestic Seed & Supply,* 446 N.W.2d 265, 270 (S.D.1989). Under this test, the claimant carries the burden of making a prima facie showing that his physical impairment, education, training and age place him in the odd-lot category. A prima facie showing is achieved (a) if the claimant is "obviously unemployable," but if the claimant's medical impairment is so limited or specialized in nature that he is not "obviously unemployable" or relegated to the odd-lot category, then (b) the claimant must demonstrate the unavailability of suitable employment by showing that he has unsuccessfully made reasonable efforts to find work. *Shepherd,* 467 N.W.2d at 918. The burden will only shift to the employer in this second alternative when the claimant produces substantial evidence that he is not employable in the competitive market. Then the employer must show that some form of suitable work is regularly and continuously available to the claimant. *Id.; Kennedy,* 465 N.W.2d at 794.

When his doctor originally allowed Spitzack to return to work after his injury, he was entrusted to stay at home and supervise over the phone. After his Employer went out of business, Spitzack actively searched for a new occupation. He made personal job contacts, registered with Job Service and submitted applications resulting in thirty-three interviews; however, he was not offered a job. Spitzack testified, "I felt I had to get out there and see what they had and—and, hopefully, maybe there was somebody that had something to offer I could do." The Department found, "Claimant felt he could not perform many of the jobs he pursued, though they were within his physical limitations." Despite this finding the record reveals only one job refusal: Spitzack was unwilling to take employment as a salesman with Culligan Water Conditioning. Culligan's hiring manager, through affidavit, stat-

ed that the job required ten to twelve hour days and crawling into areas in structures where plumbing is located—duties beyond Spitzack's physical limitations. The Department held that Spitzack failed to prove "obvious unemployability," but nonetheless fulfilled the second prong of the required prima facie showing: His job search was reasonable, but unsuccessful. *Petersen*, 515 N.W.2d at 232; *Shepherd*, 467 N.W.2d at 918.

■ The burden then shifted to Employer to show that suitable work is regularly and continuously available to Spitzack. Although Bailie performed a computer search to find types of jobs conducive to Spitzack's physical restrictions, he did not identify specific employers for Spitzack, provided no referrals, made no follow up contacts and failed to identify positions that were regularly and continuously available. The Department found, "McDonald followed up on many leads she provided to claimant for which she found claimant did not make applications." But McDonald also was unable to name employers with available jobs that Spitzack could physically perform. The circuit court found that the Department's Conclusion VII, stating the Employer has "shown that regular, suitable employment, within Claimant's limitations, is available in the Rapid City area" was a mistake of law. *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455, 459 (1970). Only one such job is mentioned in the Department's findings, Culligan, which was not suitable for Spitzack's limitations. While it is not required that an employer actually place a claimant in an open job position, more than mere possibility of employment must be shown; the employer must establish that there are positions actually open and available. *Rank*, 459 N.W.2d at 249. The circuit court concluded that neither Bailie's nor McDonald's testimony contains "any evidence, let alone substantial evidence, that positions were actually available and would have provided Claimant with the opportunity for employment within his job restrictions." We affirm the circuit court on this issue.

## II. Employer's burden to show available retraining or rehabilitation.

With no regular, continuous work available to Spitzack, the issue then turned on whether he could be retrained or rehabilitated so as to become employable. The Department held that a rehabilitation requirement may be imposed in odd-lot cases, reasoning that permanent disability should not be granted if a person can be restored to suitable employment. In approving the Department's rationale the circuit court stated:

> Although not grounded on specific authority, the Department's application of a rehabilitation requirement is a logical and well reasoned restriction on the odd-lot doctrine. It recognizes that employers are required to provide rehabilitation benefits. SDCL 62–4–5.1. More importantly, the failure to recognize such a requirement would encourage injured employees to remain unemployed and collect lifetime benefits even though a reasonable rehabilitation program would restore them to suitable, substantial and gainful employment. The latter result is contrary to public policy and the purposes underlying the odd-lot doctrine.

Whose burden then is it to establish that rehabilitation or retraining is available or unavailable, considering a claimant's restrictions? The Department has on previous cases * placed the burden on claimants and did so on this occasion as well. The Department noted that

> Claimant has not ever registered with Rehabilitation Services, and his contacts with rehabilitation experts of any kind have been limited by his attorney. It is concluded that while Claimant has established a reasonable job search effort, he has not proven that he has made reasonable attempts at vocational rehabilitation or that rehabilitation would not be available to him, by a preponderance of the evidence.

* In the following proceedings the Department held that claimants must show by affirmative evidence that they are unable to benefit from vocational rehabilitation or that retraining would not be

feasible. Littlefield v. Black Hills Rehabilitation Hospital, H.F. No. 215, 1987/88; Miley v. First United Methodist Church, H.F. No. 104, 1986/87.

The circuit court disagreed. Analogizing from rehabilitation benefits cases the court wrote:

After an employee makes a prima facie showing of the unavailability of suitable employment, the defending employer must show that the employee would be capable of finding employment without rehabilitation. . . .

It follows that where the availability of rehabilitation is in issue, the claimant should retain the initial burden of making a prima facie showing of the unavailability of suitable employment. Where the employee has made his or her prima facie showing and the employer asserts that a program of rehabilitation is available, the burden should not, however, shift again to the claimant to affirmatively prove the negative; that is, that no reasonable program of rehabilitation or retraining program is available.

In *Cozine v. Midwest Coast Transport, Inc.*, 454 N.W.2d 548 (S.D.1990), the claimant requested vocational rehabilitation in order to find suitable employment following her injury; the employer argued that she could find a job without retraining. We held that under the odd-lot test for determining total disability, once an employee has made a prima facie showing that suitable employment is unavailable, the employer then has the burden of establishing that the employee would be capable of finding such employment without rehabilitation. *Id.* at 554. Once a claimant establishes inability to find suitable employment, the employer is left to show that job opportunities exist in the competitive market. Logically, if an employer asserts that jobs are available to a claimant upon retraining or rehabilitating, then the employer must prove such assertion by establishing that retraining or rehabilitation is a reasonable means of restoring the claimant to suitable employment.

Spitzack met the prima facie requirement for odd-lot inclusion. Thereafter, the Department erred in concluding that Spitzack then had the burden to show that rehabilitation would not be successful or was unavailable. *Hobelsberger*, 181 N.W.2d at 459. The Employer asserts that should this Court hold the burden was on Employer, then the case should be remanded so there is a fair opportunity to undertake this burden.

■ At the administrative hearing, Employer was acting on the belief that the burden of proving the utility of rehabilitation rested on Spitzack. Department policy apparently allocated that burden to claimants in previous administrative decisions. Though Employer did not believe it was required to offer rehabilitation evidence, Bailie and McDonald nonetheless opined that retraining was a feasible option for Spitzack. The circuit court decided not to remand the matter to the Department because "the only record evidence supporting a conclusion of available rehabilitation was the Employer's depositions of Jeff Bailie and Shari McDonald." Reviewing their depositions de novo, the court ruled there was no substantial evidence to support the Department's conclusion that rehabilitation was available to Spitzack. The testimony from medical and expert witnesses was considerably divergent, ranging from opinions that Spitzack was unemployable to recommendations that he work at a sedentary job. Neither side offered a rehabilitation plan, because Spitzack's expert, Peniston, felt one was not appropriate, and Employer thought it was Spitzack's burden to show the feasibility of such a plan. As it was Employer's burden to establish that rehabilitation or retraining was a reasonable alternative to lifetime disability benefits, the circuit court should have given it the opportunity to meet that burden. We therefore remand this case to the Department for a hearing on the rehabilitation or retraining issue consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

MILLER, C.J., AMUNDSON, J., and WUEST, Retired J., concur.

SABERS, J., concurs in part and dissents in part.

GILBERTSON, J., not having been a member of the Court at the time this case was considered, did not participate.

SABERS, Justice (concurring in part and dissenting in part).

I would affirm the trial court in all respects. The majority opinion states:

Logically, if an employer asserts that jobs are available to a claimant upon retraining or rehabilitating, then the employer *must prove* such assertion by establishing that retraining or rehabilitation is a reasonable means of restoring the claimant to suitable employment.

(Emphasis added.) I agree fully with this statement. I also fully agree with the majority's statement that "it was *Employer's burden* to establish that rehabilitation or retraining was a reasonable alternative to lifetime disability benefits." (Emphasis added.) However, I do not agree that this case should be remanded to the Department to give the Employer another opportunity to meet that burden. The Employer had its opportunity and "the court ruled that there was no substantial evidence to support the Department's conclusion that rehabilitation was available to Spitzack." One bite of the apple is enough. A second bite should not be permitted. *See State v. Aspen,* 412 N.W.2d 881, 884 (S.D.1987).