1997 SD 127

**Margie A. KESTER, Claimant and Appellee,**

v.

**COLONIAL MANOR OF CUSTER, Employer and Appellant,**

**and**

**The Travelers, Insurer and Appellant.**

**No. 19972.**

Supreme Court of South Dakota.

Argued Sept. 9, 1997.

Decided Nov. 5, 1997.

Lawrence R. Bihlmeyer, Rapid City, for claimant and appellee.

Gregory G. Strommen of Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, for appellants.

MILLER, Chief Justice.

[¶ 1.] In this appeal, Colonial Manor and its workers' compensation insurer, The Travelers (hereinafter collectively referred to as Colonial Manor), assert that the South Dakota Department of Labor and the circuit court erred in finding that Margie Kester's present condition is causally connected to a work-related injury she suffered while working for Colonial Manor. Colonial Manor also asserts that the circuit court erred in reversing Department's decision denying permanent total disability benefits to Kester under the odd-lot doctrine. We affirm.

## FACTS

[¶ 2.] Kester began working at Colonial Manor as a housekeeper on January 2, 1984. On October 11, 1985, she suffered a back injury while trying to lift a mop bucket filled with water. This injury prompted her to immediately seek medical attention from Dr. Steven Fisher, a family practice physician in Custer, South Dakota. Dr. Fisher diagnosed Kester as suffering from lumbar strain. He continued to see her about once per week while she rested from work, took some medication, and underwent physical therapy. On November 7, 1985, Kester informed Dr. Fisher that her symptoms of lower back pain had resolved and therefore he did not schedule further treatment at that time.

[¶ 3.] Kester returned to work about a month after she first suffered her back injury. Her back continued to bother her, but she did not report this to anyone. In September 1988, in an effort to ease the pain in her back, Kester changed her duties at Colonial Manor from housekeeping to laundry. On June 7, 1989, her back pain again became so bad that she returned to Dr. Fisher. Dr. Fisher diagnosed Kester as having a possible L4–5 disc degeneration and temporarily took her off of work. After a brief period of physical therapy, Kester returned to work at Colonial Manor until January 1991, when she resigned, in part, because her work there caused pain in her back.

[¶ 4.] Kester then briefly took a position as a housekeeper at the Sun–Mark Inn in Custer in the summer of 1991, until a position opened up at the South Dakota Development Center (SDDC). She took a job as a housekeeper with SDDC in July 1991 until January 1992. During this time, Kester complained of back pain to her husband. She also visited Dr. Stephen Massopust concerning lower back pain. A CAT scan of her lower spine on January 14, 1992, revealed a central bulge at the L5–S1 level.

[¶ 5.] Kester was referred to Dr. Edward H. James by Dr. Massopust around January 23, 1992. After examining her, Dr. James sent a letter to Dr. Massopust recommending that heavy aspects of Kester's work at SDDC be eliminated. She was terminated from her job at SDDC at the end of her six-month probationary period because of her inability to do heavy work. She has not held another job since.

[¶ 6.] On June 29, 1993, a Functional Capacities Assessment (FCA) was performed on Kester at Rapid City Regional Hospital. It indicated that she could work at a light level. Dr. Steven Goff, a physiatrist and Kester's treating physician since July 15,

1992, downgraded the findings of the FCA by at least one-third on October 6, 1993. This downgrading was based on the symptoms reported to Dr. Goff at that time. He also opined that her present condition is causally related to her 1985 injury. Dr. Goff determined that on October 6, 1993, Kester had a 6% whole person physical impairment due to her back condition.

[¶ 7.] Bill Penniston was hired as a vocational consultant for Kester and first met with her in September of 1993. Penniston then met with Dr. Goff in October, 1993. Based on his meetings with Kester and Dr. Goff and also his review of the medical and vocational testing records, Penniston opined that Kester was capable of work in the sedentary to light duty ranges. He also stated he did not believe she could work an eight-hour day and is unemployable in her community.

[¶ 8.] Kester started working with Gary Phillips, a Certified Rehabilitation Consultant, on June 30, 1994. Phillips has worked with her on at least a monthly basis since then. It is Phillips' opinion that she is not employable in her community. Colonial Manor hired Tom Karrow as its vocational expert and he sent a list of potential job leads to Kester. Phillips checked out each potential job lead sent by Karrow and determined that the jobs were either unavailable or unsuitable for someone with Kester's limitations.

[¶ 9.] On October 4, 1994, Gwen Hougdahl, a physical therapist with PT–OT Associates, performed a Work Tolerance Screening and a FCA on Kester. This FCA showed that she was capable of performing work at between a sedentary and light level of employment under the U.S. Department of Labor standards. It was also determined that she may not be able to tolerate an eight-hour work day.

[¶ 10.] On November 7, 1994, Dr. Michael Koehn, a chiropractor, diagnosed Kester as having a degenerative disc disease at the L4–5 and L5–S1 levels. Dr. Koehn also stated that her present condition is causally related to her work injuries at Colonial Manor.

[¶ 11.] Kester was also examined by Dr. James Gardiner, a scientific psychologist, who determined that she suffered from a major depressive disorder caused by her inability to work. As of November 23, 1994, it is Dr. Gardiner's opinion that she is unable to conduct a job search because of her depression.

[¶ 12.] Dr. Brian Tschida, a neurologist, performed an independent medical examination of Kester on January 6, 1994. Dr. Tschida determined that she could work at a light-duty level and that returning to work would help alleviate her depression. Dr. Tschida also opined that her present condition was not related to her 1985 injury.

[¶ 13.] At the time of Department's hearing, Kester was forty-seven years old, had a high school education, and was able to read at the seventh grade level. Her past experience consisted of being a nurse's aid, an institutional housekeeper, and an institutional laundry worker. Department concluded that Kester's present condition is causally related to her injury in 1985 and the circuit court affirmed. Department also concluded that Kester was not permanently totally disabled, and that she suffered from a 6% permanent partial impairment. The circuit court reversed and remanded to Department, directing it to award Kester permanent total disability benefits under the odd-lot doctrine. Colonial Manor appeals.

## DECISION

[¶ 14.] **I. Whether Department erred in determining that Kester's present condition was causally related to her October 11, 1985, injury at Colonial Manor.**

[¶ 15.] Our standard of review in workers' compensation cases is well settled. *Hanten v. Palace Builders, Inc.,* 1997 SD 3, ¶ 8, 558 N.W.2d 76, 78. SDCL 1–26–37 governs our standard of review. Under this statute, when the issue is a question of fact then the clearly erroneous standard is applied to the agency's findings; however, when the issue is a question of law, the actions of the agency are fully reviewable. *Loewen v. Hyman Freightways, Inc.,* 1997

SD 2, ¶ 6, 557 N.W.2d 764, 766 (citing *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992); *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D.1991)). We review the findings based on deposition testimony and documentary evidence under a de novo standard of review. *Hanten*, 1997 SD 3 at ¶ 8, 558 N.W.2d at 78 (citing *Caldwell*, 489 N.W.2d at 357).

[¶ 16.] Our task on appeal is to determine if there is substantial evidence to support the agency's decision, and not to determine if there is substantial evidence that contradicts the agency's decision. *Loewen*, 1997 SD 2 at ¶ 7, 557 N.W.2d at 766; *Spitzack v. Berg Corp.*, 532 N.W.2d 72, 75 (S.D.1995) (citing *Shepherd v. Moorman Mfg.*, 467 N.W.2d 916, 919 (S.D.1991)). "We will reverse only if we are definitely and firmly convinced that a mistake has been made." *Spitzack*, 532 N.W.2d at 75 (citing *Day v. John Morrell & Co.*, 490 N.W.2d 720, 723 (S.D.1992)).

[¶ 17.] Before Kester can collect any benefits under our workers' compensation statutes, she must establish a causal connection between her injury and her employment. *Caldwell*, 489 N.W.2d at 357. "This causation requirement does not mean that the employee must prove that [her] employment was the proximate, direct, or sole cause of [her] injury; rather the employee must show that [her] employment was a *'contributing factor'* to [her] injury." *Id.* at 358 (emphasis in original) (citing *Sudrla v. Commercial Asphalt & Materials*, 465 N.W.2d 620, 621 (S.D. 1991)) (other citations omitted); *see also Tischler v. United Parcel Serv.*, 1996 SD 98, ¶ 27, 552 N.W.2d 597, 602.

[¶ 18.] " 'Issues of causation in worker's compensation cases are factual issues that are best determined by the Department.' " *Therkildsen v. Fisher Beverage*, 1996 SD 39, ¶ 8, 545 N.W.2d 834, 836 (quoting *Lawler v. Windmill Restaurant*, 435 N.W.2d 708, 709 (S.D.1989) (other citations omitted)). Here, Department found that "there is sufficient evidence showing that [Kester's] current condition is degenerative disc disease and that it is causally related to her work injuries."

[¶ 19.] Kester was first injured in 1985 and did not again require medical care for her back until 1989 and then in 1992. Colonial Manor claims that such a gap in medical care indicates that her original injury is not causally related to her current condition. Indeed, such a gap in time raises some doubt as to whether Kester's present condition is causally related to her 1985 injury. "Where there is no obvious causal relationship the testimony of a medical expert may be necessary to establish the causal connection." *Howe v. Farmers Coop. Creamery*, 81 S.D. 207, 212, 132 N.W.2d 844, 846 (1965); *see also Hanten*, 1997 SD 3 at ¶ 10, 558 N.W.2d at 78.

[¶ 20.] Dr. Fisher, Kester's treating physician from 1985 to 1990, stated in an affidavit that: "It is my conclusion from my recollections of this case and a review of all the available medical documents that, within a reasonable degree of medical certainty, Ms. Kester's chronic low back pain and disability for heavy work were causally related to her back injury occurring on October 11, 1985."

[¶ 21.] Dr. Goff concluded that Kester had originally injured her back in 1985 and this injury was further aggravated by her work at Colonial Manor, and such was a contributing factor to her present condition.

[¶ 22.] Finally, there was the opinion of Dr. Koehn (who diagnosed Kester with a degenerative disc disease) that it appeared her present condition is causally related to her work injuries.

[¶ 23.] Colonial Manor asks that these expert opinions be disregarded and the opinion of Dr. Tschida be accepted. At the request of Colonial Manor, Dr. Tschida, a neurologist, examined Kester in 1994, performed an independent medical examination (IME) on her, and reviewed her medical records. Dr. Tschida had not seen Kester before the exam. Dr. Tschida testified that: "I don't have evidence to indicate that the current complaints are related to the event of 1985."

[¶ 24.] While Dr. Tschida's opinion does contradict those of the other physicians, "[t]he trier of fact is free to accept all of, part of, or none of, an expert's opinion." *Hanson v. Penrod Constr. Co.*, 425 N.W.2d 396, 398

(S.D.1988) (citations omitted). The burden of proof is on the claimant to show by a preponderance of the evidence that some incident or activity arising out of her employment caused the disability on which the workers' compensation claim is based; "[p]roof need not arise to a degree of absolute certainty, but an award may not be based upon mere possibility or speculative evidence." *Hanten*, 1997 SD 3 at ¶ 15, 558 N.W.2d at 80 (citation omitted).

[¶ 25.] Dr. Fisher was Kester's original physician when she was first injured in 1985. He remained her physician until 1991. Colonial Manor asserts that the opinion of Dr. Tschida should be accepted and that the foundation on which the other experts base their opinions is weak. Dr. Tschida did not examine Kester until 1994, nine years after the injury. Dr. Fisher stated that, based on his original observations in 1985 and his review of Kester's subsequent medical reports, he found "within a reasonable degree of medical certainty" that her present condition is causally related to her 1985 injury.

[¶ 26.] Therefore, considering all of the foregoing, there is substantial evidence in the record to support Department's conclusion and we affirm.

[¶ 27.] **II. Whether Kester is entitled to permanent total disability benefits under the odd-lot doctrine.**

[¶ 28.] We apply the following test to determine if a claimant qualifies for permanent total odd-lot disability: " '[A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in an insubstantial income.' " *Shepherd*, 467 N.W.2d at 918 (citations omitted); *Bonnett v. Custer Lumber Corp.*, 528 N.W.2d 393, 395 (S.D.1995); *Rank v. Lindblom*, 459 N.W.2d 247, 249 (S.D.1990). Claimants must make a prima facie showing that their physical impairment, age, mental capacity, training, and education place them in the odd-lot category. *Bonnett*, 528 N.W.2d at 395; *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 231 (S.D.1994).

[¶ 29.] There are two ways in which a claimant can make out a prima facie case. One way is if the claimant is "obviously unemployable," then the burden shifts to the employer to show that there is suitable employment available in the claimant's community that will accommodate claimant's limitations. *Hendrix v. Graham Tire Co.*, 520 N.W.2d 876, 880 (S.D.1994) (citing *Shepherd*, 467 N.W.2d at 918). A claimant can establish *obvious unemployability by showing* either that his/her physical condition along with his/her education and training make it obvious that he/she is in the odd-lot total disability category, or by convincing the trier of fact that he/she suffers the kind of continuous, severe, and debilitating pain which he/she claims. *Spitzack*, 532 N.W.2d at 75; *Bonnett*, 528 N.W.2d at 395.

[¶ 30.] The second way a claimant can establish a prima facie case is if the claimant's medical impairment is so limited or specialized in nature that he/she is not "obviously unemployable" or relegated to the odd-lot category, then the claimant has the burden of showing the unavailability of suitable employment by showing he/she has made unsuccessful, "reasonable efforts" to find work. *Hendrix*, 520 N.W.2d at 881 (citing *Shepherd*, 467 N.W.2d at 918). If the claimant can produce substantial evidence that he/she is not employable in the competitive market, then the burden shifts to the employer to show that suitable work is available in the claimant's community. *Spitzack*, 532 N.W.2d at 75; *Bonnett*, 528 N.W.2d at 395 (citations omitted).

[¶ 31.] A. *Whether Kester has established a prima facie case that she falls in the odd-lot category.*

[¶ 32.] As mentioned above, Kester must establish a prima facie case that she falls in the odd-lot category. She can do this by showing either "obvious unemployability," or that she has made a reasonable, but unsuccessful job search. Whether Kester proved a prima facie case that she belongs in the odd-lot total disability category is a question of fact. *Hendrix*, 520 N.W.2d at 881; *Shepherd*, 467 N.W.2d at 919 (citing *Schepanovich v. United States Steel Corp.*, 669 P.2d 522, 529 (Wyo.1983)).

[¶ 33.] Kester is not "obviously unemployable." Department found that she was capable of performing sedentary to light work. This is supported by Drs. James, Goff, and Massopust, who all stated that she is capable of performing light work or sedentary to light work. Department also found that she was not in the kind of continuous, severe, and debilitating pain that would make her "obviously unemployable." The record does not contain much evidence that she suffers from continuous, severe, and debilitating pain. Dr. Koehn states that Kester is suffering from such pain, but the opinions of the other doctors indicate that she can perform light work. There is some indication that her pain is continuous; however, there appears to be substantial evidence to support Department's finding that Kester is not "obviously unemployable" for odd-lot categorization purposes.

[¶ 34.] Department also found Kester was not entitled to total odd-lot benefits under the second avenue available to her, that is, by showing that there is no suitable employment available to her and that despite her reasonable efforts she has been unsuccessful in obtaining employment. *See Bonnett*, 528 N.W.2d at 395. If Kester is successful in showing that she made such efforts, then the burden would shift to Colonial Manor to show that "some form of suitable work is regularly and continuously available to [her]." *Id.* Department found as a matter of law that the burden never shifted to Colonial Manor.

[¶ 35.] Kester is unable to conduct a job search because she suffers from a major depressive disorder. Dr. Gardiner, a scientific psychologist, examined her and determined that her depressive disorder was related to her inability to work because of her back pain. He stated that on October 20, 1994, he had observed Kester and felt that her depression had subsided and she was able to begin searching for employment. However, after observing her on November 16, 1994, Dr. Gardiner opined that she was again depressed and unable to conduct a job search. This was Dr. Gardiner's most recent opinion as to her ability to conduct a job search and should have been considered by Department. Therefore, there is no evidence to support Department's finding of fact that "Dr. Gardiner believes claimant can resume her job search and do full-time work."

[¶ 36.] The question remains whether Kester made a prima facie case, thus shifting the burden to Colonial Manor. This case is not like *Shepherd*, 467 N.W.2d at 918–19, where the claimant made no effort at all to find work. Here, Kester did make some effort; she filled out some applications, registered with Job Service, and even hired Gary Phillips to aid in her job search. Phillips was hired to check out potential jobs and determine if they were something she could do given her limitations. Despite doing all this, she was unable to secure employment.[1]

[¶ 37.] We hold that Kester met her burden of showing that she made reasonable, unsuccessful efforts to secure employment. Given her inability to search for work due to her depression, the steps taken to secure employment were reasonable. Kester made a prima facie case that she belongs in the odd-lot total disability category and the burden then shifted to Colonial Manor. There is not substantial evidence in the record to support Department's conclusion of law to the contrary.

[¶ 38.] B. *Whether Colonial Manor met its burden of showing that there is available work for Kester, despite her limitations.*

[¶ 39.] Once the burden shifted, Colonial Manor had to establish that some form of work was regularly and continuously available to Kester. *Spitzack*, 532 N.W.2d at 75. In determining if Colonial Manor met its burden, the standard of review is the same as when we determined if Kester had made out a prima facie case above.

[¶ 40.] Colonial Manor's vocational expert stated that he provided Kester with a list of potential employment opportunities. Based on this testimony, Department found that

---

1. Phillips considered the communities of Custer, Hill City, and Hot Springs in searching for suitable employment for Kester. Based on the job search he performed for Kester, Phillips concluded that "I don't believe she's employable in her community with the conditions that she's having to operate under."

there was suitable work available for her in her community. However, Phillips and Penniston stated that there was not suitable work available for her. Department did not consider these opinions because it found:

> [T]hey ignore the physical capacities testified to by medical doctors Goff, James Tschida, and Massopust that claimant is capable of light duty work. Penniston and Phillips are furthermore rejected because they erroneously assume claimant is in severe, continuous, debilitating pain and that her depression prevents her from conducting a job search or working.

[¶ 41.] The last part of this finding is clearly erroneous and not supported by the record because, as we noted earlier, Kester did suffer from depression that kept her from searching for work. For Phillips and Penniston to have relied on such depression was therefore proper.

[¶ 42.] Also, there is not substantial evidence to support Department's finding that Phillips and Penniston ignored the findings of the medical doctors. In fact, their depositions state that they specifically considered them.[2]

[¶ 43.] The final reason that Department rejected the opinions of Phillips and Penniston, that they assumed that Kester was in severe, continuous, and debilitating pain, is also clearly erroneous. Penniston and Phillips mention the pain, but nowhere do they state that it is severe, continuous, and debilitating. Rather, they seem to refer to the pain as continuous, but not to the level that Department found.

[¶ 44.] We conclude that there is not substantial evidence to support Department's finding that suitable work is regularly available to Kester in her community. Karrow testified that he provided her with a list of potential job leads. Even though Depart-

ment was able to judge Karrow's credibility as he testified, it is our conclusion that the depositions of Penniston and Phillips erode the foundation for Karrow's testimony.

[¶ 45.] Karrow provided a list of "potential" job opportunities to Kester, however, he apparently did so without ascertaining if these jobs were available to someone with her limitations. Phillips, on the other hand, testified that he checked each of the potential job opportunities provided by Karrow and determined that all were either outside of her abilities or not available. As we held in *Spitzack*, 532 N.W.2d at 76, "more than mere possibility of employment must be shown; the employer must establish that there are positions actually open and available." (Citing *Rank*, 459 N.W.2d at 249). The employer must also show the "existence of 'specific' positions 'regularly and continuously available' and 'actually open' in 'the community where the claimant is already residing' for persons with *all* of claimant's limitations." *Shepherd*, 467 N.W.2d at 920 (citing *Rank*, 459 N.W.2d at 249; *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs*, 629 F.2d 1327, 1329–30 (9thCir.1980)) (emphasis in original). The only substantial evidence on this issue is Phillips' testimony together with Penniston's opinion that Kester is not employable in her community.

[¶ 46.] Thus, Colonial Manor did not meet its burden of establishing that suitable work was continuously and regularly available to Kester. There is not substantial evidence in the record to support Department's finding that suitable work is available in Kester's community for someone with her limitations.

[¶ 47.] C. *Whether Kester is entitled to further medical care and benefits.*

[¶ 48.] Department concluded as a matter of law that because Kester failed to

---

2. Penniston's deposition states that he was to do a vocational evaluation of Kester and, in doing so, he reviewed medical records from Drs. Goff, Tschida, Massopust, and Fisher, and also visited with Dr. Goff personally. Dr. Goff had originally stated that Kester could perform sedentary work. The FCA done in June of 1993 listed Kester at light work ability. Dr. Goff downgraded this FCA by one-third to one-half. This opinion of Dr. Goff is what Penniston relied on. Phillips also relied on Dr. Goff's opinion. Phillips relied as well on a later FCA done by PT–OT Associates in October of 1994 which listed Kester in the sedentary work range. While Dr. Tschida and Dr. Massopust may have determined that Kester was within the light work range, Penniston and Phillips were correct in relying on the FCA and Dr. Goff, and their opinions should not have been excluded.

seek medical treatment for a period of three years after her injury in 1985, a presumption was raised under SDCL 62–4–1 that no further medical care or benefits for the injury were necessary. Section 62–4–1 states, in relevant part: "If an injured employee has not required medical treatment for a period of three years, it is presumed that no further medical care with respect to the injury is necessary." It is important to note, however, that SDCL 62–4–1 allows an employee to rebut the presumption by two methods: "Documentation that the injury is work related by the primary treating or rating physician after three years shall automatically rebut the presumption.... [T]he claimant may [also] present other medical proof to rebut the presumption." The opinions of Drs. Fisher and Goff clearly provide such rebuttal. It was therefore incorrect for Department to conclude that Kester was not entitled to more medical care or benefits.[3]

[¶ 49.] Affirmed.

[¶ 50.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

---

**3.** Department also found that a second FCA done on Kester on October 4, 1994, did not restrict the number of hours she could work. This is clearly erroneous as the FCA states that Kester "may not be able to tolerate an 8 hour day." Department then found that through work hardening, Kester could improve her endurance to work an eight-hour day. The burden of showing rehabilitation would enable Kester to find suitable employment in her community lies with Colonial Manor. See *Spitzack*, 532 N.W.2d at 77. There is no real evidence in the record that work hardening would aid Kester. A physical therapist stated that conditioning could "possibly" help Kester work up to an eight-hour work day. Dr. Goff also mentions work hardening, but doesn't specifically mention if it would apply to Kester. He also stated that the activity of lifting, which Kester has restrictions on, could not be work hardened. Colonial Manor did not meet its burden on this issue as there is not substantial evidence to support Department's finding that work hardening would help Kester.