2003 SD 2

**Mary ENGEL, Appellee,**

v.

**PROSTROLLO MOTORS and Mid–Century Insurance Co. d/b/a Farmers Insurance Group, Appellants.**

No. 22211.

Supreme Court of South Dakota.

Considered on Briefs Aug. 26, 2002.

Decided Jan. 8, 2003.

Glenn Boomsma of Breit Law Office, Sioux Falls, for appellee.

Patricia A. Meyers of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, for appellants.

ERICKSON, Circuit Judge.

[¶ 1.] Mary Engel (Engel) was awarded odd-lot benefits under the Workers Compensation Act. Prostrollo Motors (Employer) appeals that decision. We affirm.

## FACTS

[¶ 2.] At the time of the hearing Engel was forty years old. She was a high school graduate, but had been a below average student. She had attended Mitch-ell Vo-tech for one year, completing a course in meat cutting. She has never been employed as a meat cutter. Her work history consists of unskilled positions involving heavy-duty labor.

[¶ 3.] Engel began working for Employer in August 1990 detailing cars. She was also responsible for snow removal. On January 2, 1996, she suffered a work-related injury while pushing a four-wheel drive vehicle out of a snowdrift. Engel sought medical treatment and a diagnostic laparoscopy was performed and an adhesion in her abdomen region was repaired. Following surgery she continued to experience pain in her abdominal area, and could not return to work due to pain. Surgery was then performed repairing a ventral hernia.

[¶ 4.] Following this second surgery, Engel experienced significant pain relief and returned to work with restrictions to do light duty. Two days later she began to experience additional pain and under doctor's orders began exercises to strengthen her abdominal wall muscle. She eventually returned to work doing light duty. In August 1996 she resumed her former duties. However, pain again began to bother her and she quit work in August 1996.

[¶ 5.] Engel then began work at Huron Regional Medical Center, but was fired for insubordination. From April 1997 through December 7, 1999, she worked as a garment inspector and packer at Raven Industries in Huron. During part of this time period she also worked part-time as a nurse's aide at the Huron Nursing Home and later as a waitress at the Barn Restaurant in Huron.

[¶ 6.] Engel was laid off from Raven from December 8, 1999 to February 14, 2000. She was called back to work in March 2000, but refused because of pain.

[¶ 7.] During all this period of time, Engel received conservative pain control treatment. She received pain medication, physical therapy and, after February 1997, seven trigger point injections for abdominal pain.

[¶ 8.] An impairment rating was conducted in February 1998 and Engel was given fifteen-percent whole person impairment rating because of significant pain syndrome.

[¶ 9.] In September 1999, Engel was referred to Dr. Gregory Wiedel, a specialist in internal medicine. He diagnosed chronic pain, although he acknowledged he could not attribute her pain to any anatomic ideology. Dr. Wiedel agreed with the fifteen percent impairment rating. He also agreed with the opinion of Dr. Cho (who performed the impairment rating) that any dramatic improvement would be medically unlikely and that in the absence of an active lifestyle she would be further hindered.

[¶ 10.] In October 1999, Engel was treated for a gastric ulcer caused in part by the pain medicines she was taking. The ulcer was treated and cleared up. She continued to see Dr. Wiedel, tried less evasive pain control measures, but found that only lidocaine injections for pain relief were successful. Dr. Wiedel testified that these injections could continue for a lifetime.

[¶ 11.] In June 2000, Engel participated in a Functional Capacity Evaluation. The occupational therapist concluded that she exhibited symptom/disability exaggeration behavior and indicated that Engel made a poor effort.

[¶ 12.] Dr. Jerry Blow then examined Engel in September 2000. Dr. Blow concluded that the source of the pain was her original abdomen pain and that she had now developed chronic pain from that injury. He also felt there was some symptom magnification.

[¶ 13.] Engel has not been employed since December 1999. However, she has completed basic computer courses and clerical courses. Her career counselor, rehabilitation counselor and instructor all described her as motivated, diligent and have concluded that she has completed all courses necessary for a job within her limitations. She has made extensive job contacts. For example, from April through October 2000, she made over 200 job contacts. To date, she has been unable to secure employment. Lay testimony indicates that prior to her injury Engel was a very active, hard-working person.

[¶ 14.] No doctor has ever opined that Engel cannot work.

### STANDARD OF REVIEW

[¶ 15.] "The standard of review in an appeal to the Supreme Court from a trial court's appellate review of an administrative decision is de novo; unaided by any presumption that the trial court is correct." *Brown v. Douglas School Dist.*, 2002 SD 92 ¶ 17, 650 N.W.2d 264. "Our task on appeal is to determine if there is substantial evidence to support the agency's decision, and not to determine if there is substantial evidence that contradicts the agency's decision. . . . We will reverse only if we are definitely and firmly convinced that a mistake has been made." *Kester v. Colonial Manor of Custer*, 1997 SD 127, ¶ 16, 571 N.W.2d 376

### ISSUE ONE.

[¶ 16.] **Whether under the odd-lot doctrine of the Workmens' Compensation Act the hearing officer erred when determining that Engel's evidence was persuasive that she was obviously unemployable due to continuous, severe and debilitating pain?**

[¶ 17.] Employer argues that the hearing examiner erred in finding that Engel was permanently and totally disabled. "There are two ways in which a claimant can make out a prima facie case. One way is if the claimant is 'obviously unemployable.'" *Kester,* 1997 SD at ¶ 29, 571 N.W.2d at 381. The hearing examiner found this method was not applicable. Engel is not "obviously unemployable." The hearing examiner found that she was capable of performing some light work.

[¶ 18.] A claimant can establish obvious unemployability by convincing the trier of fact that she suffers "continuous, severe, and debilitating pain." *Kester,* 1997 SD at ¶ 29, 571 N.W.2d at 381. It was under this method that the hearing examiner concluded that Engel had permanent total disability benefits under the odd-lot doctrine.

[¶ 19.] Employer argues that the hearing examiner's decision betrays a fundamental misunderstanding of the odd-lot doctrine because no South Dakota case has ever accepted a claim for odd-lot status when medical evidence shows a claimant can work. Employer cites *Tiensvold v. Universal Transport, Inc.,* 464 N.W.2d 820 (S.D.1991) for this proposition. It is true that in Tiensvold we articulated the fact that "[n]o physician placed physical restraints on Tiensvold's activities." *Tiensvold,* 464 N.W.2d at 823. However, this statement did not establish a bright-line standard for determining permanent total disability. Rather, the standard is that "[a] claimant may show obvious unemployability by ... convincing the trier of fact that [s]he suffers the kind of continuous, severe and debilitating pain which [s]he claims." *Kester,* 1997 SD at ¶ 29, 571 N.W.2d at 381.

[¶ 20.] All but Employer's expert believed Engel's pain complaints to be credible. Particularly persuasive was the testimony of Dr. Gregory L. Wiedel, a doctor of internal medicine, who treated Engel for her pain. It was his opinion that Engel suffered from continuous, severe and debilitating pain. On cross-examination, Dr. Wiedel explained that the degree of pain a person suffers is subjective. More importantly, he testified there is no objective way to medically measure the amount of pain someone is experiencing. He testified that "we're talking about a 'chronic sick pain syndrome' where there is no normal anatomical correlate. In the bodies [sic] repair of even the surgical incisions there is probably regrowth of nerves that have become hyperesthetic. That is overly sensitive to any pain." He further pointed out that "there is no true anatomic ideology," which is the problem with trying to create a bright-line standard.

[¶ 21.] Dr. Jerry Blow, Employer's expert, agreed that Engel has chronic pain syndrome and is experiencing actual pain. However, he opined that he did not believe it was at the level Engel complained. He further opined that she was experiencing symptom magnification due to the stress of litigation. This opinion is unsupported by any evidence and was nothing more than speculation. Dr. Blow went on to testify that he did not believe that her description of the level of pain was consistent with his physical examination. At the same time, he also agreed that it is very difficult to measure pain and is best left to those who deal with the patient on a regular basis. More importantly, Dr. Blow agreed that there is no scientific empirical way to measure pain.

[¶ 22.] This issue comes down to a battle of expert doctors. Dr. Weidel's opinion is more persuasive based on his credentials, his interaction with Engel, the clarity of his reasoning and the fact it is substantiated by other evidence of this case.

[¶ 23.] Based upon the foregoing, Department correctly found that Engel met her burden of proving unemployable due to continuous, severe and debilitating pain.

## ISSUE TWO

[¶ 24.] **Whether the hearing officer erred when determining that Employer failed to show that there was suitable employment available in Engel's community, which would accommodate her limitations?**

[¶ 25.] Once a claimant establishes unemployability, "the burden shifts to the employer to show that there is suitable employment available in the claimant's community that will accommodate claimant's limitations." *Kester,* 1997 SD at ¶ 29, 571 N.W.2d at 381. On the other hand, SDCL 62–4–53 [1] imposes on the claimant the burden of making a reasonable, good faith search for work. Employer claims that the hearing officer failed to require Engel to present expert evidence of rehabilitation.

[¶ 26.] Engel offered testimony of Mary Lesselyoung, a rehabilitation counselor with the local Job Service office; Jeff Myers, a training specialist with the Cornerstones Career Learning Center; Janice Tschetter, a career counselor at Cornerstones; and Thomas Audet, a certified rehabilitation counselor with Medical and Vocational Rehabilitation Consulting Services. They testified that she completed clerical programs, various computer classes and software programs and used the appropriate services available. Thom-as Audet testified that these programs were more appropriate for her and she was doing what was necessary. Additionally, Employer's expert, Joel Lee agreed that concluding "I think what Mary is doing is exactly what she should be doing." This evidence was sufficient to meet the requirements of SDCL 62–4–53.

[¶ 27.] Employer also claims that Engel failed to prove she conducted a reasonable, good faith work search. Those experts who worked closely with Engel,[2] however, testified she made a credible, motivated and diligent, albeit unsuccessful search for a job. Engel's vocational expert opined that "I only wish all my clients would do that [actually go in and apply for jobs]." He concluded that she made an exhaustive area job search.

[¶ 28.] Employer's expert, Joel Lee, had not reviewed all of Engel's job search records or many of her medical records prior to testifying and had not listened to Engel's experts. Mr. Lee testified that his study merely showed openings that were generally available; however, he could not say whether these jobs were available in light of Engel's condition.

[¶ 29.] This is a credibility issue. The evidence was presented live before the hearing officer. As such, "due regard shall be given to the opportunity of the agency to judge the credibility of the witness." *Bonnett v. Custer Lumber Corp.,* 528 N.W.2d 393, 396 (S.D.1995). Based on this record and giving due regard to the

1. This statute provides in pertinent part:
    An employee shall introduce evidence of a reasonable, good faith work search effort unless the medical or vocational findings show such efforts would be futile. The effort to seek employment is not reasonable if the employee places undue limitations on the kind of work the employee will accept or purposefully leaves the labor market. An employee shall introduce expert opinion evidence that the employee is unable to benefit from vocational rehabilitation or that the same is not feasible.

2. Mary Lesselyoung, Jeff Myers, Janice Tschetter, and Thomas Audet.

hearing officer, we cannot conclude that the hearing officer's findings were in error.

## ISSUE THREE

[¶ 30.] **Did the hearing examiner err in finding that Engel's weekly injections of a local anesthetic are reasonable and necessary?**

[¶ 31.] SDCL 62–4–1 provides that "the employer shall provide necessary . . . medical . . . care." Employer argues that weekly lidocaine injections are not necessary and that other less intrusive methods, such as exercise and lidocaine patches are available.

[¶ 32.] "It is in the doctor's province to determine what is necessary or suitable and proper. *When a disagreement arises as to the treatment rendered, or recommended by the physician, it is for the employer to show that the treatment was not necessary or suitable and proper.*" *Krier v. John Morrell & Co.*, 473 N.W.2d 496, 498 (S.D.1991).

[¶ 33.] Dr. Wiedel testified that he initially tried steroids plus a local anesthetic (either lidocaine or bupivacaine). He also tried amitriptyline, an antidepressant, grabapentin, a seizure medicine, Vioxx, vicoprofen and lidocaine patches. The lidocaine patches did not seem to work very well. He then found that a weekly series of six—one percent lidocaine injections worked best. He also testified that these injections were reasonable and necessary. Dr. Wiedel was not cross-examined about these injections.

[¶ 34.] Dr. Blow acknowledges that Dr. Wiedel tried various pain medications before resorting to injections, which he believed to be a very aggressive manner of treating the pain. In his opinion he would not have used injections, but rather the most appropriate intervention was a program of stretching exercises and condi-

tioning. Further, he did not believe the injections to be necessary; however, he suggested instead that the use of lidocaine patches would have been more appropriate. While acknowledging that Dr. Wiedel had tried lidocaine patches he questioned whether they had been tried for a long enough period of time, but did nothing to determine how long Engel had tried them.

[¶ 35.] Again we are faced with determining the credibility of the two doctors involved. It is the employer's burden to prove that the treatment was not necessary or suitable and proper. *Krier*, 473 N.W.2d at 498. Based upon this record, we cannot conclude that the hearing officer erred in determining that the injections were necessary.

## CONCLUSION

[¶ 36.] Engel presented evidence to prove facts essential to compensation under workers' compensation law. We affirm.

[¶ 37.] GILBERTSON, Chief Justice, and SABERS, and KONENKAMP, Justices, and AMUNDSON, Retired Justice, affirm.

[¶ 38.] ERICKSON, Circuit Judge, for ZINTER, Justice, disqualified.

[¶ 39.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.