UNIVERSAL RUNDLE CORPORATION, Appellant, vs. INDUS-
TRIAL COMMISSION and another, Respondents.

*December 9, 1955—January 10, 1956.*

For the appellant there was a brief by *Dougherty, Arnold & Philipp,* and oral argument by *James T. Murray,* all of Milwaukee.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

BROADFOOT, J.   The plaintiff continues to attack the finding that the defendant sustained intermittent temporary disability totaling one hundred forty-seven days.  The defendant testified that he was unable to work because of the condition of his foot and ankle while employed by the plaintiff and also while working for two other employers.  He gave no testimony as to the number of days he lost because of his injury.  His wife, however, testified that she had kept a record of the time he lost and that between June 19, 1951, and the time he left plaintiff's employment he had lost about fifty-seven days.  She also testified that he lost about forty-five days while employed at Phillips and about forty-five days while employed at Grafton.  There was a discrepancy in the testimony of Mrs. Morrical as to the time the defendant continued in the employment of the plaintiff following the injury.  Plaintiff also objects to a computation based upon her testimony because in each instance she qualified the number of days lost by using the word "about."  Plaintiff therefore claims that the finding is not supported by any credible evidence.

The record indicates that Mrs. Morrical was referring to a paper when she testified as to the days that the defendant was absent from work because of his injury.  There was no cross-examination with reference to her memoranda.  There was a discrepancy as to the date the defendant left the employment of the plaintiff.  The plaintiff, however, did not offer its time records to refute the contention of the defendant that he left its employment on September 28, 1951.  The extent of defendant's temporary disability presented a question of fact to be determined by the commission.  The commission was the judge of the credibility of the witnesses.  The trial court, in its memorandum decision, reviewed the testimony and stated:

"We cannot say that the foregoing testimony *inherently* is incredible, so as to cause a finding based thereon to be erroneous, as a matter of law.  There may be inconsistencies

which are difficult of reconciliation, but this is the commission's job."

We agree with that statement by the trial court.

The plaintiff also attacks the award of the commission upon a second ground, apparently for the first time. Sec. 102.42 (7), Stats., provides:

"Unless the employee shall have elected Christian Science treatment in lieu of medical, surgical, hospital, or sanatorium treatment, no compensation shall be payable for the death or disability of an employee, if his death be caused, or in so far as his disability may be aggravated, caused, or continued (a) by an unreasonable refusal or neglect to submit to or follow any competent and reasonable medical or surgical treatment, (b) or, in the case of tuberculosis, by his refusal or neglect to submit to or follow hospital or sanatorium treatment when found by the commission to be necessary. The right to compensation accruing during a period of refusal or neglect under par. (b) shall be barred, irrespective of whether disability was aggravated, caused, or continued thereby."

The plaintiff now contends that the defendant did unreasonably refuse and neglect to submit to surgical treatment. The record shows that the defendant consulted a doctor of his own choice on September 26, 1951. A written report by said doctor was admitted in evidence. A portion of said report reads as follows:

"Diagnosis: Ulcer of Burn Scar.

"Treatment: I strongly advised the patient to return to the physician who treated this injury, and the most logical therapy to prevent further ulcers was to skin graft this area. Since the patient urged me to try to heal it, I used heavy well-padded sulfa ointment dressings which however, failed to produce the desired results.

"Discussion: Two factors contributed to the failure and poor results obtained in the treatment of this lesion: First, scar tissue has no vascularity and is vulnerable to trauma. Second, the shoe of the patient striking and rubbing this area produced sufficient trauma for the recurrent ulcerations."

This examination was had shortly before the defendant went to Phillips to join his wife. He continued to have trouble with his ankle and while at Phillips consulted another doctor. The date thereof does not appear in the record nor was any medical report received from that doctor. The defendant testified that this doctor informed him that he should have surgery but that he could do nothing for him. The defendant testified that while he was still employed by the plaintiff he consulted the nurse at its plant and asked to be referred to the doctor but the nurse indicated that it would be of no use and did not send him to the doctor. His wife testified that thereafter when the defendant was having further trouble with his foot she phoned the doctor furnished by the plaintiff and was informed that there was nothing he could do. When informed that the defendant couldn't sleep nights and walked the floor all the time, the doctor said, "What do you want me to do? Come up and put him to sleep?" and hung up the telephone receiver.

Among the findings by the examiner was the following:

"That all treatment has been provided to date and there has been no refusal or failure of treatment."

No request was made for a more specific finding and we must consider the finding made as a finding that there was no unreasonable refusal or neglect to submit to surgical treatment. No offer of surgical treatment was made by the plaintiff. The plaintiff contends that it had no knowledge that such treatment was necessary and when the matter was finally called to its attention it did provide the necessary surgery. Each of the doctors consulted by the defendant indicated that he should return to the company doctor. However, both the nurse and the company doctor had discouraged that course. Under the circumstances, we must conclude that the defendant had not unreasonably refused or neglected to submit to surgical treatment.

*By the Court.*—Judgment affirmed.