2000 SD 68

**John GILCHRIST, Claimant
and Appellee,**

v.

**TRAIL KING INDUSTRIES, INC.,
Employer, Self–Insurer and
Appellant.**

**No. 21156.**

Supreme Court of South Dakota.

Considered on Briefs March 22, 2000.

Decided May 24, 2000.

J.M. Grossenburg Winner, and Rick Johnson of Johnson, Eklund, Nicholson, Peterson & Fox Gregory, for claimant and appellee.

Susan Brunick Simons of Davenport, Evans Hurwitz & Smith, Sioux Falls, for employer, self–insurer and appellant.

GILBERTSON, Justice.

[¶ 1.] Employer Trail King Industries, Inc., (Trail King) appeals the circuit court's ruling that Claimant John Gilchrist (Gilchrist) is entitled to worker's compensation benefits for his right carpal tunnel condition and the ruling that his psychological disability resulted from his work-related physical injuries. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] The facts of this case are set out in detail in *Gilchrist v. Trail King Industries, Inc. and Rehabilitation Strategies, Inc., (Gilchrist I)* 2000 SD 67, 612 N.W.2d 10.[1] However, we will briefly highlight those facts essential to resolution of this case. Gilchrist brought this claim after he suffered an injury while working in the scope of his employment at Trail King. He was climbing off a manlift when he slipped and a ring on his right hand caught on a safety bracket, leaving him hanging from

---

1. In *Gilchrist I,* we affirmed the circuit court's grant of summary judgment on Gilchrist's claims of bad faith, wrongful termination and intentional infliction of emotional distress in favor of defendant Rehabilitation Strategies, Inc.

the manlift before falling to the floor. He suffered immediate injuries to a finger, his neck, back, and right rotator cuff (shoulder). Gilchrist developed carpal tunnel syndrome in his right hand and subsequently suffered from depression.

[¶ 3.] On November 15, 1995, Gilchrist filed a worker's compensation claim for his injuries with the Department of Labor (Department). The Department issued a decision in December 1997, ruling that Gilchrist was entitled to the rotator cuff and carpal tunnel surgery on his right hand, but that his claimed total disability from severe depression was not caused by the work injury. In February 1998, Gilchrist appealed to the Sixth Judicial Circuit. The circuit court reversed the Department's ruling on Gilchrist's psychological disability claim and found it to be work-related and compensable. However, the circuit court remanded the case back to the Department for a determination of whether Gilchrist unreasonably refused or neglected to have surgery for his right rotator cuff damage, because the Department failed to rule on the issue. Upon remand, in its February 18, 1999 amended decision, the Department ruled Gilchrist did not unreasonably refuse or neglect to avail himself of medical or surgical treatment. After a second appeal, the circuit court affirmed. Trail King appeals, raising the following issues for our review:

1. Whether the Department's ruling that Gilchrist's right carpal tunnel condition was causally related to his September 1, 1994 injury was clearly erroneous.

2. Whether the circuit court's ruling that Gilchrist's psychological condition was causally related to his employment was clearly erroneous.

3. Whether Gilchrist unreasonably refused or neglected to avail himself of medical care.

## STANDARD OF REVIEW

[¶ 4.] Our standard of review pursuant to SDCL 1–26–36 requires us to give great weight to the Department on factual questions. *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228 (citing *Helms v. Lynn's, Inc.*, 1996 SD 8, ¶¶ 9–10, 542 N.W.2d 764, 766; *Finck v. Northwest Sch. Dist. No. 52–3*, 417 N.W.2d 875, 878 (S.D.1988)). This Court reviews agency findings in the same manner as the circuit court in deciding whether they were clearly erroneous in light of all the evidence. *Id.* (citing *Matter of Northwestern Bell Tel. Co.*, 382 N.W.2d 413, 415 (S.D.1986)). Only if after a review of the entire record we are definitely and firmly convinced a mistake has been committed will we reverse. *Id.* (citing *Spitzack v. Berg Corp.*, 532 N.W.2d 72, 75 (S.D.1995) (citing *Day v. John Morrell & Co.*, 490 N.W.2d 720, 723 (S.D.1992))). When the issue is a question of law, the actions of the agency are fully reviewable. *Kester v. Colonial Manor of Custer*, 1997 SD 127, ¶ 15, 571 N.W.2d 376, 379 (citing *Loewen v. Hyman Freightways, Inc.*, 1997 SD 2, ¶ 6, 557 N.W.2d 764, 766 (citing *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992); *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D.1991))). "We review the findings based on deposition testimony and documentary evidence under a de novo standard of review." *Id.* ¶ 15, 571 N.W.2d at 380 (citing *Hanten v. Palace Builders, Inc.*, 1997 SD 3, ¶ 8, 558 N.W.2d 76–78).

## ANALYSIS AND DECISION

[¶ 5.] **1. Whether the Department's ruling that Gilchrist's right carpal tunnel condition was causally related to his September 1, 1994 injury was clearly erroneous.**

[¶ 6.] Trail King argues the Department was clearly erroneous in ruling Gilchrist's carpal tunnel syndrome in his right hand and arm was work-related. We disagree.

[¶ 7.] In order to collect worker's compensation benefits, Gilchrist must establish a causal relationship between his

injury and his employment. *Kester*, 1997 SD 127, ¶ 17, 571 N.W.2d at 380 (citing *Caldwell*, 489 N.W.2d at 357). "This causation requirement does not mean that the employee must prove that [his] employment was the proximate, direct, or sole cause of [his] injury; rather the employee must show that [his] employment was a '*contributing factor*' to [his] injury." *Id.* (citing *Caldwell*, 489 N.W.2d at 358) (emphasis in original). We find the medical evidence supports the Department's conclusion that Gilchrist's right carpal tunnel condition was work-related.

[¶ 8.] Dr. Cho was Gilchrist's treating doctor in December 1994, January 1995 and May 1996, when she gave an opinion that his right carpal tunnel condition was not work-related. However, these opinions were made without the benefit of the medical records of Dr. Adams and Dr. Christensen. On September 16, 1994, Dr. Adams stated in his medical records, "[n]oted the onset of neck pain, simultaneous complaints discomforts about [Gilchrist's] hands, and in a delayed manner, numbness, numbness being noted predominantly about the ulnar borders of both sides ... describes no prior history of injury or traumatic event." On December 20, 1994, Dr. McKenzie, for Dr. Adams, noted:

> [Gilchrist] does apparently have either a partial vs. full rotator cuff tear here. *He has been having more problems with numbness to both hands.* An EMG study done on 12–16–94 shows a severely advanced left carpal tunnel and a moderately advanced right ... fit him with cock-up wrist splints at nitetime[sic] .... (emphasis added).

Dr. Christensen, who first treated Gilchrist, noted in a medical record dated September 8, 1994, seven days after the injury, "[t]he patient also complained of paresthesia [2] of both arms." Dr. Christensen also noted consistently in medical records on September 19 and 27 that Gilchrist was experiencing paresthesia of both hands and upper extremities.

[¶ 9.] In her affidavit dated January 14, 1997, Dr. Cho repudiated her earlier opinions that Gilchrist's carpal tunnel condition was not work-related, stating she had not been furnished records from either Dr. Christensen or Dr. Adams when she made her earlier diagnosis. She stated: "Kathy Burns, rehabilitation nurse, had not kept me fully advised of John Gilchrist's ongoing treatment by other physicians at the time work releases were requested of me and at the time that opinions were requested of me concerning Mr. Gilchrist's wrist problems." Dr. Cho also indicated in her affidavit that prior to his September 1, 1994 injury, Gilchrist had received a clean bill of health.

[¶ 10.] Dr. Cho also testified in her June 24, 1997 deposition that Gilchrist's carpal tunnel condition was work-related:

> The right side I think related, whatever portion, from the work injury ... [Gilchrist] probably has preexisting carpal tunnel on both hands. However, [Gilchrist] has been asymptomatic. Right hand was injured. Yes, swelling can be involved from the injuries. When swelling happened at the wrist, it can compress the nerve further, become symptomatic. That's why I'm saying the right side seems to be related to work injury.

Thus, Dr. Cho's opinion, based upon reasonable medical probability, was that "[Gilchrist's] right carpal tunnel condition was 'caused and/or triggered and aggravated by his September 1, 1994 accidental injury at work.' "

[¶ 11.] There is substantial evidence in the record to support Dr. Cho's final opinion. First, the record contains the notes from the medical records of Drs. Christensen and Adams mentioned above. Further, on January 28, 1997, Dr. Adams concurred in his affidavit with Dr. Cho that Gilchrist's carpal tunnel condition was

---

**2.** Paresthesia is defined as "an abnormal spontaneous sensation; such as burning, pricking, tickling, or tingling." Stedman's Medical Dictionary 1032 (1976).

"caused and/or triggered and aggravated by his September 1, 1994 accidental injury at work."

[¶ 12.] Finally, even Trail King's independent medical examiner gave the same opinion. After Gilchrist was injured, Trail King, a self-insured employer, began paying worker's compensation benefits to him, including medical expenses. After Gilchrist participated in physical therapy for eight weeks, Trail King hired RSI to oversee his rehabilitation program. Kathy Burns, an employee of RSI, was assigned to Gilchrist's case, although Dr. Cho continued to be Gilchrist's primary treating physiatrist. Burns asked Dr. David Hoversten, a Sioux Falls orthopedic surgeon, to examine Gilchrist and give a second opinion as to his carpal tunnel syndrome. After examining Gilchrist, Dr. Hoversten testified at his deposition on May 8, 1997 that Gilchrist's carpal tunnel condition was in some way related to his September 1994 injury:

> Well, it would make me think that probably it was there beforehand, but not too bad, and that the injury made it seem a lot worse ... On both [sides] ... *But certainly the right side would be aggravated more had he had a traction injury to the arm where it irritates the nerves in the neck, and then will have an affect on the hand, because they are the same nerves.* If they're irritated and sore from the jerk injury on the right arm, then it could make the right hand have more symptoms than before. So it wouldn't cause it, *but it could make it be more symptomatic or worse.* (emphasis added).

[¶ 13.] Dr. Hoversten also testified, "[t]he fact is that the nerve tests show pretty severe involvement, and if you're trying to get him helped and fixed up, you would probably do carpal tunnel release surgery." Finally, he testified that Gilchrist's carpal tunnel was at the very least aggravated by the September 1st work injury:

> Well, I would think there was very likely a preexisting carpal tunnel condition, and that it was aggravated or likely made worse by the jerking on the arm and the shoulder problem. I think the swelling resulting from poor use of the right shoulder would make the carpal tunnel be more symptomatic. So I *think there could be a direct correlation.* You would then get into, is it a major cause or is it an aggravation? *I would think more in terms of significant aggravation.* (emphasis added).

[¶ 14.] "The trier of fact is free to accept all of, part of, or none of, an expert's opinion." *Kester,* 1997 SD 127, ¶ 24, 571 N.W.2d at 380 (citing *Hanson v. Penrod Constr. Co.,* 425 N.W.2d 396, 398 (S.D. 1988)). We conclude the Department did not err in accepting the opinion of Dr. Cho, as well as the other medical opinions. The medical evidence establishes the requisite "causal connection" between Gilchrist's injury and his employment. *Id.* ¶ 17.

[¶ 15.] Therefore, we conclude the Department's decision was not clearly erroneous as we find there is substantial evidence in the record to support the Department's conclusion. Affirmed.

[¶ 16.] **2. Whether the circuit court's ruling that Gilchrist's psychological condition was causally related to his employment was clearly erroneous.**

[¶ 17.] The Department ruled that Gilchrist had not established his psychological condition was produced by his September 1, 1994 injury, thus precluding any worker's compensation benefits for the mental disability. The circuit court reversed the Department, finding that the medical evidence established the requisite causal relationship between the work-related accident and Gilchrist's psychological condition. We agree.

[¶ 18.] As with his physical injury, Gilchrist must establish a causal connection between his injury and his employment. *Kester,* 1997 SD 127, ¶ 17, 571

N.W.2d at 380 (citing *Caldwell,* 489 N.W.2d at 357). The causation requirement requires Gilchrist to show his employment was a "contributing factor" to his mental injury. *Id.*[3] "Where there is no causal relationship the testimony of a medical expert may be necessary to establish the causal connection." *Id.* ¶ 19 (citing *Howe v. Farmers Coop. Creamery,* 81 S.D. 207, 212, 132 N.W.2d 844, 846 (1965)). Here, the parties do not dispute that Gilchrist is totally disabled due to his psychological condition, i.e., his depression. However, Trail King contests Gilchrist's assertion that his depression is causally related to his work-related injury. It argues Gilchrist became depressed only after his carpal tunnel/rotator cuff surgery was cancelled. Thus, Trail King asserts "[d]epression based upon alleged treatment due to the handling of a claim for compensation or termination from employment does not render any resulting psychological disability compensable under worker's compensation." Gilchrist argues that both his work-related injury and Trail King's denial of the surgery together caused his depression. Essentially, he argues the Department erred when it found there could only be one cause of his injuries, i.e., Trail King's denial of the surgery, because he must only prove his injury was a contributing factor to the depression. We agree with Gilchrist.

[¶ 19.] In *Everingim v. Good Samaritan Center of New Underwood,* 1996 SD 104, 552 N.W.2d 837, this Court held psychological disabilities can be work-related. Since Gilchrist claims his depression was in part caused by his work-related physical injury, to prove his condition is compensable, he must show his depression falls within the physical-mental category as discussed in *Everingim. Id.* ¶ 25, 552 N.W.2d at 841. A "physical-mental" injury is defined:

When there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable.

*Id.* (citing 1B Larson, Workmen's Compensation Law, §§ 42.20–42.23 at 7–813 to 7–876).

[¶ 20.] Gilchrist experienced physical trauma when he suffered a rotator-cuff tear, myofascial pain syndrome in the cervical and upper back region and right carpal tunnel syndrome. This physical trauma in turn was a contributing factor to his depression. Two psychiatrists, Dr. David Bean and Dr. Matthew Stanley, have concluded there is a significant causal relationship between Gilchrist's work injuries and his psychological condition.

[¶ 21.] Dr. Bean, a Sioux Falls psychiatrist, was hired by Trail King to perform an independent forensic psychiatric evaluation of Gilchrist. Dr. Bean diagnosed Gilchrist with Adjustment Disorder with "Depressed and Anxious Mood, Severe," and with major depression. He also noted physical injuries of right rotator cuff and carpal tunnel syndrome, and that Gilchrist was "significantly disabled" based on his psychological condition. Finally, Dr. Bean concluded:

*[Gilchrist's] psychological disability is in part related to his physical disability as well as an apparent need for more active treatment of his psychological symptomatology with particular considerations of the use of anti-anxiety medication, more aggressive anti-depressive medication treatment, more frequent psychiatric follow-up appointments, introduction of individual psychotherapy, and possible psychiatric hospitalization*

---

**3.** After its amendment in 1995, SDCL 62–1–1(7) now provides:

A mental injury is compensable only if a compensable physical injury is and remains a major contributing cause of the mental injury, as shown by clear and convincing evidence. A mental injury is any psychological, psychiatric, or emotional condition for which compensation is sought.

*... There does appear to be a significant causal relationship between his Workmen's Compensation injury and his current psychological condition, i.e., of an Adjustment Disorder and Major Depression ...* The other problems that have flowed from his Workmen's Compensation injury, that have contributed to his psychological disability, include termination of his work, termination of his insurance, failure to achieve a surgical correction of his medical problems, and significant economic problems ... It is my opinion that his psychological condition has been "aggravated" due to the prolongation of his physical disability due to the lack of surgical correction of his rotator cuff syndrome as well as his right carpal tunnel syndrome. (emphasis added).

[¶ 22.] In reaching his opinion, Dr. Bean, relied on the medical records of Dr. Stanley, Gilchrist's treating psychiatrist. Dr. Stanley stated on February 4, 1997, that Gilchrist was totally disabled at that time. He also concluded:

It does appear that [Gilchrist's] [mental] problems are specifically related to the September 1, 1994 work injury. Although I cannot state that the injury itself was the cause of the depression, *it does appear that the depression was directly related to the injuries and the subsequent difficulties that Mr. Gilchrist encountered since September 1, 1994. He now appears to be in the very difficult situation of having his physical symptoms exacerbate his depression and vice versa.* I believe that my opinions as stated above are based on a reasonable medical certainty. (emphasis added).

Thus, Dr. Stanley believed Gilchrist's depression flowed from, and was causally related to, his physical injuries.

[¶ 23.] Dr. Bean also noted that Dr. Hoversten had recognized early on in Gilchrist's treatment that he was depressed. Dr. Bean states "[i]t is of note that in an evaluation by David Hoversten, orthopedic surgeon, dated December 22, 1994, Dr. Hoversten noted 'significant discouragement and depression due to the prolongation of his problems and slow recovery.' " Gilchrist's surgery had been scheduled for February 24, 1995. He was told on or around February 3, 1995 that Trail King would authorize the rotator cuff surgery but not the carpal tunnel surgery. Thus, Gilchrist was experiencing depression approximately two months before his carpal tunnel/rotator cuff was denied by Trail King. We find this evidence refutes Trail King's claim that Gilchrist's depression was caused solely by the cancellation of the surgery and resulting financial problems.

[¶ 24.] Moreover, Gilchrist had no prior history of depression before his September 1, 1994 work injury. Gilchrist had been healthy, active and never missed a day of work. After the injury, he often complained of not feeling well, and was embarrassed about the way he looked, stood and walked, and experienced many frequent crying episodes. Gilchrist's wife, Sheila, testified that he had "always been outgoing, worked outside, always worked, always happy ... He just loved life. He is so different now. He's so—getting so introverted. I don't think – I mean he feels really humiliated." In fact, it was Sheila who sought mental health care treatment for Gilchrist. She testified that on one occasion after he received his injury, she came home from work and Gilchrist was "sitting in the living room with a shotgun beside him on the sofa ... He said we'd be better off without him. He couldn't get any help, he couldn't work, and he was – he was just so humiliated. He's never been that way."

[¶ 25.] Dr. Bean's medical testimony is uncontroverted. His opinion that there is a significant causal relationship between Gilchrist's physical injury and his psychological condition establishes the requisite causal relationship, rendering Gilchrist's depression compensable. The circuit

court's reversal of the Department is affirmed.

**[¶ 26.] 3. Whether Gilchrist unreasonably refused or neglected to avail himself of medical care.**

[¶ 27.] Trail King argues Gilchrist's depression as well as his physical symptoms associated with his right shoulder condition were aggravated due to his refusal to undergo right rotator cuff surgery, which was approved as early as 1995. Gilchrist responds that his refusal of the shoulder surgery was reasonable under the circumstances and any aggravation was the fault of Trail King, for refusing to authorize the combined right rotator cuff and carpal tunnel surgeries.

[¶ 28.] SDCL 62–4–43 states, in pertinent part:

> If the injured employee unreasonably refuses or neglects to avail himself of medical or surgical treatment, the employer is not liable for an aggravation of such injury due to such refusal and neglect and the department of labor may suspend, reduce or limit the compensation otherwise payable.

[¶ 29.] Gilchrist scheduled a surgery for February 24, 1995 with Dr. Hoversten for both his right rotator cuff and his right carpal tunnel. Betty Mostek, of Dr. Hoversten's office contacted Sharon Crider at Risk Administration Services, Trail King's third party administrator, to determine if pre-authorization was necessary for these surgeries. Crider informed Mostek that Trail King would only pre-authorize the shoulder surgery because it was awaiting Dr. Cho's opinion whether the carpal tunnel condition was work-related.

[¶ 30.] Dr. Hoversten testified it would have been "good medical practice" to do both surgeries simultaneously, mostly for the patient's convenience, although the two procedures could have been performed separately. Dr. Adams also informed Kathy Burns that he would do the rotator cuff repair on Gilchrist's right shoulder and the carpal tunnel surgery simultaneously.

[¶ 31.] On February 3, 1995, Mostek informed Gilchrist that only the right rotator cuff surgery had been authorized, and Trail King would not fund the carpal tunnel procedure. Gilchrist told Mostek to "thank" Dr. Hoversten for "everything," but that he could not go through with the surgery because his worker's compensation carrier had been "jerking him around," and he did not have the financial resources to have the carpal tunnel surgery done. Trail King did not authorize the carpal tunnel surgery until after the Department ordered it to do so in 1997. Gilchrist has since undergone the surgeries.

[¶ 32.] After a review of the record, we conclude the Department's finding that Gilchrist did not unreasonably refuse surgical treatment in this case is not clearly erroneous. Initially, we note "[t]he reasonableness of an employee's neglect or refusal to submit to treatment is a question of fact to be determined by [the Department]." *Klein Industrial Salvage v. Dep't. of Industry, Labor & HR*, 80 Wis.2d 457, 259 N.W.2d 124, 125 (1977) (citing *Chain Belt Co. v. Industrial Comm.*, 188 Wis. 414, 417, 206 N.W. 209 (1925)). We give deference to the Department on findings of fact. *Sopko*, 1998 SD 8, ¶ 6, 575 N.W.2d at 228 (citations omitted).

[¶ 33.] The circuit court found that Gilchrist was never specifically offered the isolated treatment of right rotator cuff surgery, which Trail King claims he unreasonably refused. We agree with the circuit court. Trail King offered Gilchrist a combined rotator cuff/carpal tunnel surgery, which he accepted. Gilchrist made it clear that if Trail King was going to finance both surgeries, he preferred Dr. Hoversten to perform the procedures. Trail King then refused to authorize the carpal tunnel portion. Implicit in SDCL 62–4–43 is the premise that the employer made medical or surgical treatment available.

In this case, Trail King did not make the combined right rotator cuff and carpal tunnel surgery available. One cannot be found to unreasonably refuse what has never been offered in the first place. *Klein*, 259 N.W.2d at 126 (citing *Universal Rundle Corp. v. Industrial Comm.*, 271 Wis. 578, 582, 74 N.W.2d 193 (1956); *Banner Coffee Co. v. Billig*, 170 Wis. 157, 161, 174 N.W. 544 (1919)); *see also Flores v. Workmen's Compensation Appeals Bd.*, 36 Cal.App.3d 388, 111 Cal.Rptr. 424, 427 (1973) (interpreting a statute similar to SDCL 62-4-43 to mean that "a tender of medical or surgical treatment by the employer [ ] is an essential prerequisite to any possible forfeiture . . . .").

[¶ 34.] Moreover, the Department found that Dr. Hoversten suggested to Gilchrist that he undergo the combined surgery because it was good medical practice. It was reasonable for Gilchrist to refuse to undergo rotator cuff surgery in isolation. He would have continued to experience pain from the carpal tunnel, even after a successful shoulder surgery, as his wrist condition would have gone unaddressed. Dr. Hoversten testified, "[p]ersonally if my hands were that bad, I would probably want to have the surgical release [for carpal tunnel], too."

[¶ 35.] Gilchrist testified he did not have the money to pay for carpal tunnel surgery, as he was unemployed by that point and had no other available form of insurance. His health insurance with Trail King had been terminated in February of 1995. It was reasonable for Gilchrist to avoid the financial burden of undergoing a costly medical procedure he could not afford. Gilchrist subsequently inquired whether Medicare would pay for the surgeries when he became eligible for Social Security Disability benefits. However, he did not become eligible for Medicare until March or April of 1997. By this time, the Department had already ordered Trail King to pay for the carpal tunnel surgery. Thus, it is apparent Gilchrist made a reasonable attempt to find available options to pay for the surgery.

[¶ 36.] We recognize that Gilchrist was not completely cooperative with Trail King after he became injured.[4] In December 1994, Dr. Cho stated Gilchrist could perform light-duty work at Trail King, with certain restrictions. Gilchrist could operate a forklift, except when he was taking Darvocet. He met with Norm Tarbell, Loss Control Manager at Trail King, to discuss returning to work. Gilchrist informed Tarbell he did not feel he was ready to return to work and that he was not feeling well. Despite this, Trail King sent Gilchrist a letter the next day advising him he was expected to return to work within 48 hours of receipt of the letter. Gilchrist never returned to work at Trail King.

[¶ 37.] During this time, Gilchrist was also advised that due to his partial release by Dr. Cho to work four hours per day, his benefits were reduced to temporary partial disability based upon this partial ability to work. Dr. Adams agreed with Dr. Cho's opinion regarding Gilchrist's ability to return to work. However, Dr. Cho stated in her subsequent affidavit that at the time work releases were requested of her, she had not been fully advised of Gilchrist's ongoing treatment and condition. Thus, Dr. Cho was not aware at the time she gave her approval for work release that Drs. Christensen and Adams had noted symptoms of carpal tunnel syndrome. She also was not aware at that time that as early as December, 1994, Dr. Hoversten had recognized symptoms of depression in Gilchrist.

[¶ 38.] The circuit court noted "[t]here was definitely a communication failure be-

---

4. Trail King claims Gilchrist failed to answer its mail and phone calls to him, refused to answer the door when a representative of Trail King attempted to personally contact him and failed to provide medical records from Dr. Leland to Dr. Christensen. Trail King further claims it was issuing compensation checks to Gilchrist but when it advised his attorney of this, Gilchrist failed to pick them up.

tween [Trail King] and [Gilchrist]." Yet, despite this, the circuit court found the Department's ruling that Gilchrist did not unreasonably refuse the shoulder surgery was not clearly erroneous. We agree that the Department's decision is supported by the record. Gilchrist was beginning to experience depression. He testified at the hearing that he first began feeling depressed "[w]hen I lost everything. I was hurting, and [Trail King] took my job away, and I didn't have any money coming in." He also testified that after he was told he had to report to work within 48 hours, or he would be terminated:

> It just built up after that, and I – all the – all the doctors I owed and – and all the expenses I was running up, I – I just figured that I could just eliminate everybody's headache. They wouldn't have to worry about paying for anything any more. It was always – it was a fight and a hassle from the minute Kathy [Burns] came on ... Both Norm [Tarbell] and Kathy would just beat me up....

[¶ 39.] Gilchrist admitted he was aware that temporary partial disability checks were available for him at Trail King. Despite his financial need, he made no attempt to obtain them. This further supports a finding that Gilchrist was experiencing depression and not thinking rationally.

 [¶ 40.] The Department observed Gilchrist testify about his injuries, depression and the manner Trail King's denial of the combined surgeries affected him. The Department was in the best position to judge Gilchrist's credibility while he testified. *Wagaman v. Sioux Falls Constr.*, 1998 SD 27, ¶ 43, 576 N.W.2d 237, 244. Given that, and after a review of the deposition testimony and medical records, we cannot say it was clearly erroneous to find that Gilchrist did not unreasonably refuse medical treatment. "We do not look for reasons to reverse, even if we would not

have made a similar decision ... but confine our review to a determination whether the record contains substantial evidence to support the agency's decision." *Fenner v. Trimac Transp., Inc.*, 1996 SD 121, ¶ 15, 554 N.W.2d 485, 489 (internal citation omitted). Such substantial evidence exists in this case.

[¶ 41.] Affirmed.[5]

[¶ 42.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.

---

5. Based on our resolution of this issue, we conclude, as did the circuit court, the issue of whether Gilchrist aggravated his injuries, is moot.